**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 13-cv-00185-REB-MJW

JACK WELLER,
GLADYS WOODEN, and
MATT WOODEN,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

HSBC MORTGAGE SERVICES, INC., ASSURANT, INC., AMERICAN SECURITY
INSURANCE COMPANY, and JOHN DOES 1-10,

      Defendants.

---

## ORDER RE: MOTIONS TO COMPEL ARBITRATION

---

**Blackburn, J.**

      The matters before me are (1) the **Motion of Defendant HSBC Mortgage
Services, Inc. To Compel Arbitration and Stay Action as to Plaintiff Jack Weller's
Claims** [#53],[1] filed May 10, 2013; and (2) **Defendants Assurant, Inc. and American
Security Insurance Company's Motion To Compel Arbitration and To Stay
Proceedings** [#60], filed June 5, 2013.[2]  I grant HSBC's motion and grant the Assurant
defendants' motion to compel arbitration, but deny their motion to stay the remainder of
these proceedings in the interim.

---

    [1]  "[#53]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's electronic case filing and management system (CM/ECF).  I use this
convention throughout this order.

    [2]  The issues raised by and inherent to the motions are fully briefed, obviating the necessity for
oral argument.  Accordingly, I deny plaintiffs' request for argument.

## I.  JURISDICTION

I putatively have jurisdiction over this matter pursuant to 18 U.S.C. § 1964(a)

(civil RICO) and 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act).

## II.  STANDARD OF REVIEW

The decision whether to enforce an arbitration agreement involves a two-step

inquiry.  First, I must determine whether the parties agreed to arbitrate the dispute.

***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct.

3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir.

2000).  Second, I must consider whether any statute or policy renders the claims non-

arbitrable.  ***Mitsubishi Motors Corp.***, 105 S.Ct. at 3355; ***Williams***, 203 F.3d at 764.

## III.  ANALYSIS

This case involves the practice of including within mortgage loan contracts a

provision allowing the lender or third-party servicer to "force place" insurance when the

borrower fails to maintain insurance.  The named plaintiffs are individuals who

refinanced or purchased mortgages that are serviced by defendant HSBC Mortgage

Services, Inc. ("HSBC").  Defendants Assurant, Inc. ("Assurant"), and American Security

Insurance Company ("ASIC") (collectively, "the Assurant defendants") are insurance

providers through which HSBC allegedly force places insurance and to which it

outsources insurance tracking, monitoring, and processing.

Plaintiffs allege that HSBC imposes excessive, unauthorized, and unnecessary

flood insurance coverage on the loans it services.  Of particular relevance to the instant

motions to compel arbitration, plaintiff Jack Weller alleges that in December 2009, three

years into the life of his loan, HSBC altered its original determination that the property

did not require flood insurance.  Although Weller initially purchased flood insurance on

his own (under protest), he ultimately could not maintain that insurance.  In January

2012, HSBC provided Weller with force-placed flood insurance.  Soon thereafter, Mr.

Weller contacted the Federal Emergency Management Agency (FEMA) and learned

that his property was not, in fact, located in a flood hazard zone and therefore did not

require flood insurance.[3]  Although HSBC subsequently acknowledged that Mr. Weller's

property was not required to carry flood insurance, it nevertheless refused to remove

some of the charges for previously force-placed insurance.

Plaintiffs allege claims for relief against HSBC for breach of contract and breach

of fiduciary duty and violation of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), the Truth in Lending Act ("TILA"), and the Colorado Consumer Protection

Act ("CCPA").  The Assurant defendants are sued for unjust enrichment, aiding and

abetting HSBC's breach of fiduciary duty, and violations of RICO and TILA.  Plaintiffs

seek monetary, declaratory, and injunctive relief.  Both defendant groups filed motions

to compel Mr. Weller to arbitrate his individual claims against them.

## A.  MR. WELLER'S CLAIMS AGAINST HSBC

In connection with the mortgage he purchased from HSBC in November 2006,

Mr. Weller executed a $200,000 Note secured by a Deed of Trust on the property as

security in favor of HSBC.  At the same time, Mr. Weller signed an arbitration

agreement with HSBC which allows either party to demand binding arbitration of "any

Claim," defined by the agreement as follows:

> **"Claim"** is to be given the broadest possible meaning, and
> shall mean any claim, dispute, or controversy, whether

---

[3] Unlike Mr. Weller, plaintiffs Gladys and Matt Wooden's property was located in a flood hazard zone.  Their allegations suggest that the forced-placed policy HSBC purchased for them from ASIC was more than three times as expensive as the insurance they previously acquired independently.  They further allege that HSBC received substantial kickbacks from Assurant on the policy.

> based upon contract, tort (intentional or otherwise),
> constitution, statute, common law, regulation, ordinance or
> equity, and whether pre-existing, present or future, including
> . . . claims seeking relief of any type, including damages
> and/or injunctive, declaratory or other equitable relief, arising
> from or relating to Your Loan with Lender or the Loan
> Agreement, or any products or services offered in
> connection with Your Loan with Lender or the Loan
> Agreement, including, but not limited to, any dispute or
> controversy concerning, the validity or enforceability of this
> Arbitration Agreement, any party thereof or the entire Loan
> Agreement, and whether or not the Claim is subject to
> arbitration.

(**HSBC Motion App.**, Exh. 3 § 1 at 1.)[4]  By its terms, the agreement is governed by the

FAA.  (*Id.*, Exh. 3 § 6 at 4.)  Nevertheless, state law governs the initial inquiry whether

the arbitration agreement is valid and enforceable.  ***First Options of Chicago, Inc. v.***

***Kaplan***, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).[5]

Mr. Weller does not address the validity or scope of the arbitration agreement

directly.  Indeed, it facially appears that the arbitration agreement is valid, ***see Vescent,***

***Inc. v. Prosun International, LLC***, 2010 WL 4658862 at *2 (D. Colo. Nov. 9, 2010)

(valid contract requires proof of "mutual assent to an exchange, between competent

parties, with regard to a certain subject matter, for legal consideration"), and that Mr.

Weller's claims fall within the broad ambit of that agreement.  Instead, Mr. Weller argues

that the agreement is unenforceable pursuant to section 1639c(e)(3) of the Dodd-Frank

Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-

203, 124 Stat. 1376, ***codified at*** 15 U.S.C. § 1639c(e), and/or because it is

---

[4]  The arbitration agreement includes a list of "Excluded Claims or Proceedings," none of which is argued to be implicated here.  (**See Def. Motion App.**, Exh. 3 § 1 at 2.)

[5]  By contrast, challenges to the validity of the contract as a whole are for the arbitrator to resolve. See ***Buckeye Check Cashing, Inc. v. Cardegna***, 546 U.S. 440, 449, –126 S.Ct. 1204, 1210, 163 L.Ed.2d 1038 (2006).

unconscionable under Colorado state law.   I examine each argument in turn.

## 1.  APPLICABILITY OF THE DODD-FRANK ACT AMENDMENTS

The Dodd-Frank Act "imposes, among its many initiatives, the refinement and

restriction of" the FAA's policy favoring arbitration of claims.  *Pezza v. Investors*

*Capital Corp.*, 767 F.Supp.2d 225, 226 (D. Mass. 2011) (quoting *Preston v. Ferrer*,

552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008)).[6]  In particular, section

1639c(e)(3), entitled "No waiver of statutory cause of action," provides that

> No provision of any residential mortgage loan or of any
> extension of credit under an open end consumer credit plan
> secured by the principal dwelling of the consumer, and no
> other agreement between the consumer and the creditor
> relating to the residential mortgage loan or extension of
> credit referred to in paragraph (1), shall be applied or
> interpreted so as to bar a consumer from bringing an action
> in an appropriate district court of the United States, or any
> other court of competent jurisdiction, pursuant to section
> 1640 of this title or any other provision of law, for damages
> or other relief in connection with any alleged violation of this
> section, any other provision of this subchapter, or any other
> Federal law.

Mr. Weller claims that this provision prohibits HSBC from compelling him to arbitrate his

claims against it.

However, the effective date of the Dodd-Frank amendment is July 21, 2010,

several years after the arbitration agreement at issue here was executed.  Thus, the

immediate issue is whether the provisions of the amendment should or must be applied

retroactively.  "Retroactivity is not favored in the law," *Bowen v. Georgetown*

---

[6]  The court in *Pezza* considered section 922 of the Dodd-Frank Act, which, in turn, amended the whistleblower protections of the Sarbanes-Oxley Corporate and Criminal Fraud Accountability Act of 2002, to provide that "[t]he rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement" and concomitantly that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [the Sarbanes–Oxley whistleblower protection provision]." 124 Stat. at 1848, *codified at* 18 U.S.C. § 1514A(e)(1) & (2).  *See also Wong v. CKX, Inc.*, 890 F.Supp.2d 411, 421 (S.D.N.Y. 2012).

*University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988),

most particularly when retroactive application of a statue "would impair rights a party

possessed when he acted, increase a party's liability for past conduct, or impose new

duties with respect to transactions already completed," *Fernandez-Vargas v.*

*Gonzales*, 548 U.S. 30, 37, 126 S.Ct. 2422, 2427-28, 165 L.Ed.2d 323 (2006) (citation

and internal quotation marks omitted).  Determining whether a statute should apply

retroactively when vested rights may be lost or new obligations imposed involves a

tripartite, sequential process:

> We first look to whether Congress has expressly prescribed
> the statute's proper reach, and in the absence of language
> as helpful as that we try to draw a comparably firm
> conclusion about the temporal reach specifically intended by
> applying our normal rules of construction[.]  If that effort fails,
> we ask whether applying the statute to the person objecting
> would have a retroactive consequence in the disfavored
> sense of affecting substantive rights, liabilities, or duties [on
> the basis of] conduct arising before [its] enactment.  If the
> answer is yes, we then apply the presumption against
> retroactivity by construing the statute as inapplicable to the
> event or act in question owing to the absen[ce of] a clear
> indication from Congress that it intended such a result.

*Id.*, 126 S.Ct. at 2428 (internal citations and quotation marks omitted; alterations in

original).

Mr. Weller does not contest that Congress did not specifically articulate a clear

intent to give section 1639c(e)(3) of the Dodd-Frank Act retroactive effect.[7]  *See*

*Landgraf v. USI Film Products*, 511 U.S. 244, 259-60, 114 S.Ct. 1483, 1494, 128

L.Ed.2d 229 (1994) (had Congress intended statute to have retroactive effect, "it surely

---

[7] Mr. Weller's argument that retroactivity is not an issue because this lawsuit was filed after the effective date of the Dodd-Frank amendments is unavailing.  The key date is when the underlying acts that form the basis of the suit occurred, not when the plaintiff brought suit.  *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 (1997).

would have used language comparable to . . . 'shall apply to all proceedings pending on or commenced after the date of enactment of this Act'") (citation omitted).  I therefore proceed to the second step of the sequential analysis and consider whether the retroactive application of the statute would affect substantive rights, liabilities, or duties arising from conduct prior to the date of enactment.  *Fernandez-Vargas*, 126 S.Ct. at 2428.  At this step, it matters whether the statute is characterized as one "affecting contractual or property rights" –  in which case retroactivity would be impermissible – or alternatively whether it is one "conferring or ousting jurisdiction" – as to which retroactive application is permissible because only the tribunal in which the case may be heard is affected.  *Landgraf*, 114 S.Ct. at 1500, 1502; *Pezza*, 767 F.Supp.2d at 232-33.

There is a split in authority among the district courts that have considered retroactive application of the Dodd-Frank amendments governing arbitrability.  Mr. Weller relies on the district court decisions in *Wong v. CKX, Inc.*, 890 F.Supp.2d 411 (S.D.N.Y. 2012), and *Pezza v. Investors Capital Corp.*, 767 F.Supp.2d 225 (D. Mass. 2011), in which the courts held that section 922 of the Dodd-Frank Act (dealing with whistleblower protections, *see supra* note 6) did not divest the parties of substantive rights, but merely altered the tribunal in which the dispute would be resolved.  *See Pezza*, 767 F.Supp.2d at 233 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.") (citation and internal quotation marks omitted).  The court therefore concluded that the arbitration provisions of that section of Dodd-Frank could be applied retroactively.

Other district courts have rejected this approach.  *See Blackwell v. Bank of*

*America Corp.*, 2012 WL 1229675 (D.S.C. April 12, 2012), *adopting* 2012 WL 1229673 (D.S.C. March 22, 2012); *Henderson v. Masco Framing Corp.*, 2011 WL 3022535 (D. Nev. July 22, 2011).   Noting first that "[r]etroactivity is not favored in the law" and thus that there is a presumption against applying statutes retroactively, *Henderson*, 2011 WL 3022535 at *4 (quoting *Landgraf*, 114 S.Ct. at 1496), these courts stress that arbitration is primarily a contractual matter governed by the law of contracts, *id.*  They thus have concluded that the right to insist on arbitration is not just a matter of where the claims may be heard but a question of vested, contractual rights, which may not be retroactively withdrawn absent clear congressional intent to that effect.   *See id.*; *see also Blackwell*, 2011 WL 1229673 at *4.

I find that the rationale of these latter decisions is the more reasoned and legally supportable approach to this question. In my opinion, *Pezza* and *Wong* too blithely disregard the presumption against retroactivity and the need for "predictability and stability" attendant on preserving established contractual expectations.   *See Landgraf*, 114 S.Ct. at 1500.  Indeed, these decisions disregard the very essence of the substantive/jurisdictional distinction as described by the Supreme Court itself: that "jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties."   *Id.* at 1502 (citation and internal quotation marks omitted). An arbitration agreement creates a right, one that under the FAA is "irrevocable." *see* 9 U.S.C. § 2, and one which the Supreme Court has insisted by placed on equal footing with other contract rights, *see AT&T Mobility LLC v. Concepcion*, – U.S. –, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.").

Ultimately, therefore, I concur with the district courts in *Blackwell* and

*Henderson* and find that the Dodd-Frank amendments, codified at 15 U.S.C. § 1639c(e)(3) do not operate retroactively to nullify Mr. Weller's arbitration agreement.  I therefore turn to Mr. Weller's alternative argument that enforcement of the agreement would be unconscionable.

## 2.  UNCONSCIONABILITY

Section 2 of the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Unconscionability is one such equitable consideration that my allow a party to avoid its agreement to arbitrate.  *See Mobility LLC v. Concepcion*, – U.S. –, 131 S.Ct. 1740, 1745-48, 179 L.Ed.2d 742 (2011).  Under Colorado law, several factors inform the unconscionability analysis, including,

> (1) a standardized agreement executed by parties of unequal bargaining power; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable; (5) the terms of the contract; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the circumstances surrounding the formation of the contract.

*Vernon v. Qwest Communications International, Inc.*, – F.Supp.2d –, 2013 WL 752155 at *8 (D. Colo. Feb. 27, 2013) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)).  The burden is on Mr. Weller to prove that the arbitration provision is unconscionable.  *General Steel Domestic Sales, LLC v. Rising Sun Missionary Baptist Church, Inc.*, 2012 WL 1801955 at *2 (D. Colo. May 17, 2012).  Moreover, he must demonstrate both procedural and substantive unconscionability.  *Vernon*, 2013 WL 752155 at *8.

Substantively, there is nothing inherently unfair about submitting Mr. Weller's

claims to arbitration or the terms of this particular arbitration agreement itself.  *See*

*Bernal v. Burnett*, 793 F.Supp.2d 1280, 1288 (D. Colo. 2011).[8]  On the procedural end,

Mr. Weller claims that the arbitration agreement was buried in a stack of closing

documents and that he does not remember seeing it or being provided a copy of it prior

to the instigation of this litigation.  Nevertheless, he does not dispute that it is his

signature which appears on the document.  A party "generally cannot avoid contractual

obligations by claiming that he or she did not read the agreement."  *Vernon v. Qwest*

*Communications International, Inc*., 857 F.Supp.2d 1135, 1152 (D. Colo. 2012),

*aff'd*, 2013 WL 752155 (D. Colo. Feb. 27, 2013) (citation and internal quotation marks

omitted).

    The contract itself is a separate document and plainly titled "**ARBITRATION**

**AGREEMENT**" in bold-face type.  The typeface of the rest of the document is small but

uniform, with certain provisions bolded and/or printed in all capital letters.  The final

section, just above Mr. Weller's signature, provides:

> **BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE
> THAT THEY HAD A RIGHT TO LITIGATE CERTAIN
> CLAIMS THROUGH A COURT BEFORE A JUDGE OR
> JURY, AND THAT THEY WILL NOT HAVE THAT RIGHT IF
> EITHER PARTY ELECTS ARBITRATION PURSUANT TO
> THIS AGREEMENT, EXCEPT AS PROVIDED OTHERWISE
> HEREIN.  THE PARTIES HEREBY KNOWINGLY AND
> VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE
> SUCH CLAIMS UPON ELECTION OF ARBITRATION BY
> EITHER PARTY.  THE PARTIES FURTHER
> ACKNOWLEDGE THAT THEY HAVE READ THIS ENTIRE
> ARBITRATION AGREEMENT CAREFULLY, THAT THEY
> RECEIVED A DUPLICATE COPY OF THIS AGREEMENT,
> AND THAT THEY ARE ENTERING INTO THIS**

---

[8]  Mr. Weller's argument that the arbitration agreement is unconscionable because Congress has
proscribed such agreements by virtue of the Dodd-Frank amendments is both clearly tautological and
wholly unconvincing.

**ARBITRATION AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THE ARBITRATION AGREEMENT**.

(**Def. Motion App.**, Exh. 3 § 11 at 6.)  Moreover, although Mr. Weller attests he was not provided a copy of the mortgage loan documents in advance of the closing, nothing in his affidavit suggests that he was prevented from requesting the documents in advance, taking adequate time to review them, or asking questions about them.  Similarly, although the contract was drafted by HSBC and presented to Mr. Weller for his signature, there is nothing in the record to suggest that the terms were completely non-negotiable – it appears, instead, that Mr. Weller simply did not ask about them.  Even considered as contracts of adhesion, they are not *per se* unconscionable for that reason.  *See Bernal*, 793 F.Supp.2d at 1287.  Indeed, nothing in the record suggests that Mr. Weller was compelled to refinance his home with HSBC at all.

For these reasons, I find and conclude that enforcement of Mr. Weller's agreement to arbitrate his claims against HSBC is not unconscionable.  No other statute or policy makes these types of claims non-arbitrable.  I therefore will grant HSBC's motion to compel Mr. Weller to arbitrate his claims against it.

### B.  MR. WELLER'S CLAIMS AGAINST THE ASSURANT DEFENDANTS

The Assurant defendants also seek to require Mr. Weller to arbitrate his claims against them.  They insist that Mr. Weller is equitably estopped from resisting arbitration of their claims, despite the fact that the Assurant defendants themselves are non-signatories to the arbitration agreement.  After careful consideration of the applicable law and the allegations and facts of this case, I agree.

In general, "arbitration is a matter of contract and a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit." ***AT&T***

***Technologies, Inc. v. Communications Workers of America***, 475 U.S. 643, 648, 106

S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citation and internal quotation marks omitted).

Nevertheless, as with other contracts, an arbitration agreement may be enforced

against – or in favor of – nonparties in certain circumstances, which are defined by

general precepts of state contract law. ***See Arthur Andersen LLP v. Carlisle***, 556

U.S. 624, 631, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009); ***Lenox MacLaren***

***Surgical Corp. v. Medtronic, Inc***., 449 Fed. Appx. 704, 708 (10th Cir. Nov. 15, 2011).

One such principle is equitable estoppel, which

> precludes a party from asserting rights he otherwise would
> have had against another when his own conduct renders
> assertion of those rights contrary to equity. . . .  In the
> arbitration context, the doctrine recognizes that a party may
> be estopped from asserting that the lack of [another's]
> signature on a written contract precludes enforcement of the
> contract's arbitration clause when [the party] has consistently
> maintained that other provisions of the same contract should
> be enforced to benefit him.  A signatory plaintiff cannot, on
> the one hand, seek to hold the non-signatory liable pursuant
> to duties imposed by the agreement, which contains an
> arbitration provision, but, on the other hand, deny
> arbitration's applicability because the defendant is a
> non-signatory.

***Lenox MacLaren Surgical Corp.***, 449 Fed. Appx at 708 (citations and internal

quotation marks omitted; alterations in original).  Thus, a non-signatory may compel a

signatory to arbitrate in two circumstances: (1) "when the signatory must rely on the

terms of the written agreement in asserting [its] claims against the nonsignatory;" and

(2) "when the signatory alleges substantially interdependent and concerted misconduct

by both the nonsignatory and one or more of the signatories to the contract." ***Id.***

(citations and internal quotation marks omitted).  With respect to this second situation,

however,

> allegations of collusion will support estoppel only when they
> establish that the claims against the nonsignatory are
> intimately founded in and intertwined with the obligations
> imposed by the contract containing the arbitration clause. . . .
> The plaintiff's actual dependance on the underlying contract
> in making out the claim against the nonsignatory defendant is
> therefore always the *sine qua non* of an appropriate situation
> for applying equitable estoppel.

*Id.* at 709 (citation and internal quotation marks omitted).  I therefore turn to the

averments of the complaint to determine whether equitable estoppel applies in this

instance.

The HSBC mortgage contract to which the arbitration provision pertains clearly

allows HSBC to force place insurance on Mr. Weller's property, and Mr. Weller does not

challenge that authority *per se*.  (**See Compl.** ¶¶ 16-17 at 5-6 (acknowledging that

mortgage loan contract gives the lender discretion to force place insurance).)   Instead,

he purports to challenge

> (1) "HSBC's decision to purchase force-placed flood
> insurance from the Assurant Defendants pursuant to
> agreements that return an improper financial benefit to
> Defendants and/or their subsidiaries/affiliates that is
> unrelated to any contractual or other *bona fide* interest in
> protecting the lender's interest in the loan;"
>
> (2) the practice of "forcing Plaintiffs and Class members to
> purchase and maintain flood insurance in amounts greater
> than required by law, greater than required by their written
> mortgage agreements, and/or greater than the lenders'
> financial interests in their properties";
>
> (3) the alleged practice of "improperly backdating flood
> insurance policies to cover periods fo which there is no risk
> of loss;" and
>
> (4) "HSBC's *decision to purchase* force-placed flood
> insurance from insurers that provide an improper financial
> benefit to Defendants and/or their affiliates and at rates that

> far exceed borrower-purchased flood insurance (while
> providing substantially less coverage), and other actions
> taken by Defendants to increase the number of properties
> force-placed and to increase the coverage amounts"

(*Id.* ¶¶ 2-5 at 1-2 (emphasis in original).)  Clearly, none of these claims would exist in

the first instance were it not for Mr. Weller's contractual agreement with HSBC to allow it

to force place insurance.  Yet, the relevant inquiry is whether the HSBC contract

containing the arbitration provision forms the legal – as opposed to merely the factual –

predicate of the claims.  *See Lenox MacLaren Surgical Corp.*, 449 Fed. Appx. at 709.

Turning to this question, I note that, among other claims, Mr. Weller has sued the

Assurant defendants for aiding and abetting breach of fiduciary duty.  Although

defendants dispute the cognizability of such a claim under applicable law,[9] clearly it

presupposes the existence of fiduciary duties on the part of HSBC, which duties

allegedly arise from HSBC's authority pursuant to the mortgage agreement to deduct

the costs of force-placed insurance from funds held in escrow.  (*See* **Compl.** ¶¶ 158-

161 &166-168 at 51-52.)  This claim thus is legally as well as factually based in the

mortgage agreement.  Likewise, plaintiffs' claim of unjust enrichment is premised on the

Assurant defendants' alleged acceptance of premiums from force-placed insurance

policies contemplated by HSBC's mortgage agreements.  There would be no legal basis

for such a claim without the underlying mortgage agreement of which the arbitration

clause is an integral part.[10]

_____

[9] This argument informs the basis of the pending **Motion To Certify Determinative Question of Virginia Law by Defendants Assurant, Inc. and American Security Insurance Company** [#61], filed June 11, 2013.

[10] In addition, plaintiffs' RICO and RICO conspiracy claims clearly depend on the existence of collusion between HSBC and the Assurant defendants, which, in turn, is premised on their relationship vis-a-vis the mortgage contracts.

Thus, I find and conclude that Mr. Weller's claims against the Assurant

defendants should be arbitrated under principles of equitable estoppel.[11]

### C.  MR. AND MRS. WOODEN'S CLAIMS

The question thus becomes what should become of the remainder of the lawsuit,

specifically, the claims of Mr. and Mrs. Wooden and the putative class.  The Federal

Arbitration Act "*requires* piecemeal resolution when necessary to give effect to an

arbitration agreement"; nevertheless, I have discretion to stay non-arbitrable claims until

arbitration is completed. ***Moses H. Cone Memorial Hospital v. Mercury Construction***

***Corp.***, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (emphasis in

original).  My discretion is informed by considerations of judicial efficiency, ***Coors***

***Brewing Co. v. Molson Breweries***, 51 F.3d 1511, 1518 (10th Cir. 1995), as well as

"issues such as the risk of inconsistent rulings, the extent to which parties will be bound

by the arbitrators' decision, and the prejudice that may result from delays," ***AgGrow***

***Oils, L.L.C. v. National Union Fire Insurance Co. of Pittsburgh, PA***, 242 F.3d 777,

783 (8th Cir. 2001).

Neither HSBC nor the Assurant defendants have addressed any of these

relevant issues in their motions.  It strikes this court, however, that there are no

efficiencies to be gained in this instance by granting a stay of the remaining claims.

There is nothing to suggest at this stage of the proceedings that the Woodens are not

adequate representatives for the class, or, alternatively, that another individual plaintiff

might be found from among the class to represent the interests of those similarly

situated to Mr. Weller.  I therefore deny the Assurant defendants' motion to the extent it

---

[11]  I further agree that the arbitration agreement contemplates that Mr. Weller's claims must be arbitrated on an individual, not a class-wide, basis.

seeks to stay the remainder of this lawsuit pending arbitration.

**IV.  ORDERS**

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Motion of Defendant HSBC Mortgage Services, Inc. To Compel Arbitration and Stay Action as to Plaintiff Jack Weller's Claims** [#53], filed May 10, 2013, is **GRANTED**;

2.  That **Defendants Assurant, Inc. and American Security Insurance Company's Motion To Compel Arbitration and To Stay Proceedings** [#60], filed June 5, 2013, is **GRANTED IN PART** and **DENIED IN PART** as follows:

> a.  That the motion is **GRANTED** insofar as it seeks to compel arbitration of the individual claims of plaintiff, Jack Weller, against the Assurant defendants; and

> b.  That the motion is **DENIED** insofar as it seeks to stay the remaining claims in this lawsuit pending the outcome of the Weller arbitration;

3.  That plaintiff, Jack Weller, and defendants, HSBC Mortgage Services, Inc.; Assurant, Inc.; and American Security Insurance Company, **SHALL PROCEED** to arbitration of the individual claims of plaintiff, Jack Weller;

4.  That the claims of plaintiff, Jack Weller against defendants, HSBC Mortgage Services, Inc.; Assurant, Inc.; and American Security Insurance Company, are **STAYED** pending outcome of the arbitration;

5.  That on or before **October 7, 2013**, and every **ninety (90) days** thereafter, until the arbitration is completed, plaintiff, Jack Weller, and defendants, HSBC Mortgage Services, Inc.; Assurant, Inc.; and American Security Insurance Company, **SHALL FILE**

16

a status report indicating the status of the arbitration, including but not limited to, its anticipated date of its completion; and

      6.  That within **fourteen (14) days** of the completion of the arbitration, plaintiff, Jack Weller, and defendants, HSBC Mortgage Services, Inc.; Assurant, Inc.; and American Security Insurance Company, **SHALL FILE** a statement with the court stating that the arbitration has been completed, describing the results of the arbitration, and indicating what, if any, further action each party intends to take with respect to this litigation.

      Dated September 11, 2013, at Denver, Colorado.

                          **BY THE COURT:**

                          Robert E. Blackburn
                          United States District Judge